UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PEGGY COTTONHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-21-1013-P |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

ORDER

Plaintiff, appearing *pro se* and *in forma pauperis*, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I.  Administrative History and Agency Decision

Plaintiff protectively filed her application for disability insurance benefits on June 5, 2019, alleging a disability onset date of June 15, 2016. AR 26. The claims were denied initially and on reconsideration. Plaintiff and a vocational expert ("VE") testified during a telephonic hearing before an Administrative Law Judge

("ALJ") on November 16, 2020. AR 47-79. The ALJ issued an unfavorable decision on December 18, 2020. AR 23-42.

Following the agency's well-established sequential evaluation procedure, the ALJ found Plaintiff engaged in substantial gainful activity from April 1, 2019 through July 31, 2019. AR 29. The ALJ also found, however, that there "has been a continuous twelve-month period during which the claimant did not engage in substantial gainful activity." *Id.* The ALJ explained that the remainder of the decision covered that period of time. *Id.*

At the second step, the ALJ found Plaintiff had the severe impairment of obesity. *Id.* At the third step, the ALJ found this impairment was not *per se* disabling as Plaintiff's impairments or combination of impairments did not meet or medically equal the requirements of a listed impairment. AR 33.

At step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a full range of medium exertion work and did not suffer from any other physical or mental limitations or restrictions. *Id.* Based on this RFC finding and VE testimony regarding the requirements of Plaintiff's previous work, the ALJ determined Plaintiff was able to perform her past relevant work as a certified nurse assistant ("CNA"), medical assistant, and housekeeping cleaner. AR 42. As a result, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from April 1, 2019 through the date of the decision. *Id.*

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

II. <u>Standard of Review</u>

The Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401, *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last no less than twelve months. *Barnhart v. Walton*, 535 U.S. 212 (2002).

The Court must determine whether Defendant's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S.___, 139 S. Ct. 1148, 1154 (2019). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted).

The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation, quotations, and alteration omitted). The Court must also be mindful that reviewing courts may not create post-hoc rationalizations to explain Defendant's treatment of evidence when that treatment is not apparent from the decision itself. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) (citing, *e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

III. Issues

Plaintiff raises several issues on appeal. First, Plaintiff contends the ALJ did not properly consider her severe impairment of obesity in combination with her non-severe impairments. Doc. No. 14 ("Op. Br.") at 3, 7-9. Second, Plaintiff asserts the ALJ erred at step four by failing to set forth explicit descriptions of her past relevant work. *Id.* at 3, 5, 7-8. Third, Plaintiff argues the ALJ erred by failing to apply the Medical Vocational Guidelines ("GRIDS") in determining whether she was disabled. *Id.* at 8-9. Finally, Plaintiff states that the ALJ who presided over her case was not properly appointed. Doc. No. 19 at 3.

IV.   ALJ's Consideration of Obesity Impairment

Plaintiff contends the ALJ erred in his consideration of her severe impairment of obesity, specifically in combination with her other non-severe impairments and their resulting symptoms. Op. Br. at 3, 7. However, a review of the ALJ's decision undermines Plaintiff's argument.

After concluding Plaintiff suffered from the severe impairment of obesity, AR 29, the ALJ noted Plaintiff's non-severe impairments. AR 30.

> The claimant's remaining impairments are hypoglycemia, essential hypertension, visual disturbances, post-traumatic headache, sprain of ligaments of cervical spine, cervicalgia, cervical radiculopathy, segmental and somatic dysfunction of cervical region, sprain of ligaments of thoracic spine, concussion without loss of consciousness, muscle spasm, segmental and somatic dysfunction of lumbar region, radiculopathy of lumbar region, sprain of lumbar spine and pelvis, segmental and somatic dysfunction of thoracic region, hypocalcemia, hypokalemia, swelling of lower extremity, insomnia, headache, dizziness, shortness of breath, palpitations, and depression.

*Id.* The ALJ concluded each of these impairments, considered individually or in combination with Plaintiff's other impairments, are non-severe because they cause no more than a minimal limitation in Plaintiff's ability to perform basic work activities. *Id.* Throughout the remainder of the decision, the ALJ thoroughly discussed Plaintiff's various subjective reports of pain and related symptoms, the medical record including treatment for not only obesity but also certain non-severe impairments, and the medical opinions within the record. AR 29-41.

With regard to Plaintiff's mental limitations, the ALJ explained that Dr. Stephen Lange performed a consultative examination on Plaintiff. AR 30, 41. Dr. Lange noted Plaintiff appeared to pay appropriate attention to personal hygiene, ambulated without apparent difficulty, exhibited appropriate psychomotor activity, was awake, alert, and "oriented in three of four spheres," and her conversational and language skills were appropriate for her age and education level. AR 30, 41, 336. Although Plaintiff could not describe the reason for her consultation, her thought process was coherent, linear, and goal directed with relevant associations, and she denied gross disturbances in reality. *Id.* Dr. Lange described Plaintiff's affect as tearful and angry, and she described her typical mood as depressed. AR 41, 336.

Dr. Lange discussed various issues with Plaintiff including her turbulent homelife and isolation, treatment history, and current medication. AR 337. Dr. Lange diagnosed Plaintiff with adjustment disorder with depressed mood. AR 30, 41, 338. He rated Plaintiff's "ability to understand, remember and carry out simple and complex instructions in a work-related environment" as good. AR 338. He also concluded she can maintain satisfactory workplace relationships and noted that her "coping ability is overwhelmed by life stressors." *Id.* The ALJ also noted the opinions of two consultative reviewing physicians who concluded, based on the record, that Plaintiff's mental impairment(s) overall "indicate[] mild impairment in global and work-related functioning at this time." AR 30, 85-86, 98-99.

The ALJ thoroughly discussed the affect of Plaintiff's obesity on her overall ability to perform work activities, which Plaintiff does not dispute. Contrary to Plaintiff's assertions, however, the ALJ also specifically noted that he considered "any functional limitations in [Plaintiff]'s ability to do basic work activities due to obesity and any other physical or mental impairments." AR 38. He explained that obesity may increase the severity of a co-existing or related impairment. *Id.* He also stated that the Social Security Ruling ("SSR") 19-2p acknowledges that "the combined effects of obesity with other impairments may be greater than the effects of each of the impairments considered separately . . . . When assessing [RFC], we must consider how [a medically determinable impairment ("MDI")] of obesity alone, or in combination with other impairments that are severe, or in combination of severe and non-severe MDIs limit work related functions." *Id.*

In accordance with these acknowledgments that it is necessary to consider Plaintiff's obesity in combination with the numerous non-severe impairments previously identified, the ALJ went on to analyze Plaintiff's medical record as a whole, including but not limited to treatment, findings, and opinions related to Plaintiff's various back conditions, hypertension, hypoglycemia, AR 38-39, 40-41. Thus, the ALJ's decision clearly illustrates that he did consider not only Plaintiff's obesity but her obesity impairment in combination with her other impairments.

Based on the record, it appears Plaintiff merely disagrees with the ALJ's conclusions. However, Plaintiff's disagreement with the ALJ's conclusions provides no basis for this Court to reweigh the evidence in the manner she implicitly requests. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *see also Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments], Mr. Alarid is asking us to reweigh the evidence, which we cannot do."); *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988) (explaining that conflicts in the evidence are for the ALJ to resolve).

V. <u>Medical Opinions</u>

Plaintiff asserts that the opinion of a treating physician is the only type of medical opinion relevant to the RFC, and because the record is devoid of the same, the decision should be reversed and remanded. Op. Br. at 7. Plaintiff's assertion is incorrect.

Social Security regulations or guidelines do not require the record to include an opinion from a treating physician in order for the ALJ to determine a plaintiff's RFC. More specifically, Plaintiff's argument that a treating physician's opinion is "the only type of opinion relevant to the determination of an RFC," *see id.*, is not supported by the Social Security Regulations. Indeed, the Regulations place no special weight on opinions offered by a treating source or otherwise. *See* 20 C.F.R.

§ 404.1520c(a) (explaining that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . ."). "Instead, medical opinions . . . are evaluated for their persuasiveness according to a uniform set of considerations." *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (citing 20 C.F.R. § 416.920(c)). *See also, cf., Simon v. Comm'r of Soc. Sec Admin.*, No. CIV-16-480-STE, 2017 WL 1194515, at *5 (W.D. Okla. March 30, 2017) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. To the contrary, the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (citation and quotations omitted)); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (rejecting argument that the ALJ could not rely on the opinion of a consultative examiner in determining RFC). Accordingly, Plaintiff's assertion of error in this regard is denied.

VI. <u>Plaintiff's Past Relevant Work</u>

Plaintiff argues the ALJ failed to properly establish the requirements of her past relevant work to the VE before relying on the VE's testimony. Op. Br. at 6. Specifically, she complains the ALJ recited only the numerical designations from the *Dictionary of Occupational Titles* ("DOT") and the level of exertion for each job to the VE, rather than "explicitly include[ing] a recitation of the requirements of

9

Plaintiff's past relevant work[.]" *Id.* at 7.[1] She contends the ALJ failed to perform the required analysis at phase two of step four of the sequential evaluation process in establishing the requirements of Plaintiff's past relevant work. Op. Br. at 7.

The law is well established that an ALJ may rely upon the descriptions in the DOT and/or the testimony of a VE in determining the demands of a plaintiff's past relevant work as it is generally performed in the national economy or as the claimant actually performed it. 20 C.F.R. § 404.1560(b)(2). Here, the ALJ permissibly relied on the DOT and the VE's testimony in deciding Plaintiff's past relevant work is that of "a CNA (DOT # 355.674-014, medium exertion, SVP4); medical assistant (DOT # 079.362-010, light exertion, SVP 5); and housekeeping cleaner (DOT # 323.687-014, light exertion, SVP 2)." AR 42. By citing the DOT, the ALJ incorporated that agency-approved source by reference in his decision. *See Campbell v. Astrue*, 525 F. Supp. 2d 1256, 1264 (D. Kan. 2007) (holding that the ALJ incorporated the source containing the DOT descriptions by referencing the "physical and mental demands of the jobs . . . as described by the [DOT]"). This served adequately to establish the ALJ's findings regarding the demands of Plaintiff's past relevant work at phase two of step four. *See Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010) (holding

---

[1] The DOT is considered an authoritative publication that may be used to determine whether jobs are available that a particular claimant can perform. SSR 00-4p, 2000 WL 1898704, at *2; SSR 96-9p, 1996 WL 374185, at *9.

10

"the ALJ's phase-two findings . . . adequate" where ALJ did not make findings regarding the plaintiff's past relevant work but referenced the pertinent DOT job listing); *Campbell*, 525 F. Supp. 2d at 1264 (holding that by incorporating the DOT descriptions, the "ALJ substantially complied with the requirement that he make findings setting forth the physical and mental demands of the job."). Further, the ALJ is "presumptively entitled" to rely on the DOT. *Adams v. Colvin*, 616 F. App'x 393, 395 (10th Cir. 2015) (citing *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051-52 (10th Cir. 1993)); *see also Gaines v. Colvin*, No. CIV-15-591-HE, 2016 WL 8674691, at *4 (W.D. Okla. Jan. 29, 2016), *report and recommendation adopted in full*, 2016 WL 3189275 (W.D. Okla. June 7, 2016) (applying similar analysis).

## VII. Application of the GRIDS

Plaintiff contends the ALJ should have applied the GRIDS to evaluate whether she was disabled. Op. Br. at 8-9. However, this argument depends upon finding the ALJ erred in determining Plaintiff could perform her past relevant work. As Plaintiff acknowledges, the GRIDS only apply when a plaintiff's "impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. Here, the ALJ concluded Plaintiff could perform her past relevant work. As discussed previously, Plaintiff's assertions of error in that regard do not warrant reversal. Therefore, Plaintiff's contention that the ALJ should

have applied the GRIDS to determine disability is without merit. *See Teresa M.J. v. Saul*, No. 19-CV-465-JED-CDL, 2021 WL 5278543, at *10 (N.D. Okla. Jan. 4, 2021) ("[The GRIDS] apply only where a claimant cannot perform his or her past relevant work due to one or more severe impairments. *See id.* § 200.00(a). Because the ALJ properly determined at step four that Plaintiff can perform her past relevant work, the [GRIDS] are inapplicable here.").

VIII. The ALJ's Appointment

In Plaintiff's Reply, she argues that the ALJ, Mr. Edward Thompson, was not properly appointed. Doc. No. 19 at 3. She contends then that because her case was not adjudicated by a constitutionally appointed ALJ, it should be remanded for a new hearing before a different ALJ. *Id.*

In asserting this argument, Plaintiff relies on *Lucia v. SEC*, __ U.S. __, 138 S. Ct. 2044 (2018). *Id.* As the Tenth Circuit recently explained,

> [T]he Supreme Court held in *Lucia*, . . . that ALJs with the Securities and Exchange Commission (SEC) were subject to the Appointments Clause of the Constitution, U.S. Const. art. II, § 2, cl. 2. The Court noted that "[t]he Appointments Clause prescribes the exclusive means of appointing 'Officers'" and that "[o]nly the President, a court of law, or a head of department can do so." *Lucia,* 138 S.Ct. at 2051. The Court concluded that SEC ALJs were "Officers of the United States" because they held a "continuing office established by law," exercised "significant discretion when carrying out . . . important functions," possessed "nearly all the tools of federal trial judges," and often had the last word in SEC proceedings. *Id.* at 2053-54 (internal quotation marks omitted). The Court further held that "[t]he appropriate remedy for an adjudication tainted with an appointments violation is a new hearing before a properly appointed official," because the judge who "heard

[the] case and issued an initial decision on the merits," "even if he has by now received (or receives sometime in the future) a constitutional appointment," "cannot be expected to consider the matter as though he had not adjudicated it before." *Id.* at 2055 (internal quotation marks omitted).

*Rajo v. Comm'r, SSA*, No. 21-1033, 2022 WL 1210073, at *2 (10th Cir. April 25, 2022).[2]

However, the *Lucia* decision does not affect Plaintiff's case because in July 2018, the Acting Social Security Administration ("SSA") Commissioner responded to *Lucia* by appointing the SSA's ALJs. *Rajo*, 2022 WL 1210073, at *2 (citing SSR 19-1p, 84 Fed. Reg. 9582-02, 9583 (Mar. 15, 2019)). Plaintiff's hearing was not conducted until November 16, 2020. AR 26. Thus, at that time, there is no question that Mr. Thompson was a properly appointed ALJ.

IX.   Conclusion

Based on the foregoing analysis, the decision of Defendant is affirmed. Judgment will issue accordingly.

ENTERED this  6th   day of June, 2022.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE

---

[2] Prior to the *Lucia* decision, the SEC "had left the task of appointing ALJs . . . to SEC staff members." *Lucia*, 138 S.Ct. at 2050.